UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                Case No. 3:04-cr-189-J-99MCR

BRUCE FRAZIER THOMAS

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, files this sentencing memorandum in support of its positions regarding sentencing. First, the United States contends that the defendant is not eligible for the "safety valve" provisions set forth at 18 U.S.C. §3553(f) and USSG §5C1.2 both because he held a leadership position in the conspiracy to which he has pled guilty and because he used credible threats of violence in connection with the offense. Accordingly, the ten-year minimum mandatory sentence provided in 21 U.S.C. §841(b)(1)(A) applies. Second, the defendant's guidelines sentence should be enhanced under USSG §3B1.1 because he held a leadership position in the conspiracy. Third, the defendant's guidelines sentence should be enhanced under USSG §3C1.1 because he attempted to obstruct justice both before and after his arrest. Fourth, for the same reason, the defendant should not receive the benefit of a reduction for acceptance of responsibility under USSG §3E1.1.

"The burden is on the defendant to show that he has met all of the safety valve factors." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004) (citing United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997)). Those factors include that "the

defendant did not use violence or credible threats of violence . . . in connection with the offense" and that "the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines . . . ." See 18 U.S.C. §3553(f)(2) and (4); USSG §5C1.2(a)(2) and (4).[1] To ensure that the safety valve determination is subject to meaningful appellate review, the Court must make findings–explicit or implicit–that the defendant does not qualify under one or more of the factors.  See United States v. Reid, 139 F.3d 1367, 1368 (11th Cir. 1998).

I.      LEADERSHIP ROLE

The defendant was, at least, a manager or supervisor of the conspiracy to grow and distribute marihuana, a criminal activity that involved five or more participants, warranting a three-level upward adjustment under USSG §3B1.1(b) and disqualifying the defendant from receiving the safety valve under 18 U.S.C. §3553(f)(4) and USSG §5C1.2(a)(4).  At the sentencing hearing, the testimony and evidence will establish that in 1995 the defendant went to a cousin of his by marriage, Donnel Robinson, and

---

[1] Those factors also include that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ."  See 18 U.S.C. §3553(f)(5); USSG §5C1.2(a)(5).  As of this writing, the defendant has not made any such disclosure.  However, his counsel has indicated that he will do so before the sentencing hearing.  The government awaits this disclosure before determining whether it will also argue that the defendant has not complied with this provision.  In this regard, "'[t]he government has no obligation to solicit information that could help a defendant meet the requirements for the safety valve.'"  See Johnson, 375 F.3d at 1303 n.1 (quoting United States v. O'Dell, 247 F.3d 655, 675-76 (6th Cir. 2001)).  The government has declined to meet with the defendant because, as discussed below, he made statements that he was going to pretend to cooperate with the government merely to garner his release.  After he was released, he planned to coordinate the murders of law enforcement officers, DEA Special Agent Tommy Flowers and Putnam County Sheriff's Deputy John Merchant, and a government witness, Michael Ash.

recruited him to assist in building and operating an underground marihuana growing operation. The defendant and Robinson bought a piece of property in Putnam County for the specific purpose of its being the location of the underground growing operation. After the underground growing area was built, Robinson was the caretaker at the grow until approximately early 1997 (that is, for approximately seven or eight months). During this time, the defendant assisted with harvesting the plants. Robinson provided the processed marihuana to the defendant at the defendant's home. The defendant sold the marihuana to his nephew, Richard Bell, and out of the proceeds the defendant paid Robinson a stipend of about $1200.00 per month. In approximately early 1997, Robinson told the defendant that he wanted out of the marihuana operation. When Robinson told the defendant that he wanted out, the defendant became angry because he knew that he would have to recruit another person to run the growing operation.

    As a result of Robinson's wanting to leave, the defendant recruited another person, Michael Ash, to take over the marihuana growing operation. Ash was friends with the defendant's sons. (The defendant is 61 years old; Michael Ash is 31.) The defendant was aware that Ash had a small marihuana growing operation. The defendant introduced Ash to Robinson at the defendant's house and the three later met in the underground grow area so that the defendant and Robinson could show Ash the growing operation. Ash agreed to run the grow and did so, with the help of Don Hawkins, until their arrest on March 1, 2004. Ash was required to "buy into" the business and for the first couple of years received only a stipend of about $1000 per month from the defendant, with the defendant receiving the lion's share of the profits. After Ash paid off his debt, he began to receive a larger share of the profits. For the first

couple of years, Ash delivered the marihuana to the defendant, who then sold it to Bell, just as he had done with Robinson. The defendant then paid Ash his stipend out of the proceeds from the sale. In later years, Ash delivered the marihuana directly to Bell and then would take the money from the sale to the defendant, who would spit it between the two.

As demonstrated by the defendant's hatching the plot to build the underground growing area, recruiting Robinson to assist him in both building the growing area and operating it initially, recruiting Ash to operate the growing area after Robinson decided he no longer wanted to do it, requiring Ash to "buy into" the operation, and receiving the lion's share of the profits from the operation, the defendant was a leader of the conspiracy. The defendant initially financed the operation and purchased all of the necessary equipment. The defendant was the person around whom the conspiracy revolved and Robinson and Ash took their orders from him. Although the defendant was not generally involved in the day-to-day running of the operation, he was, in essence and in fact, the manager of the operation, just as the manager of any business is the overseer of the business rather than the one who does the daily work that needs to be done. Because the defendant was an organizer, leader, manager, or supervisor of others in the offense, he should receive an upward adjustment under USSG §3B1.1(b) and he should be disqualified from receiving the safety valve under 18 U.S.C. §3553(f)(4) and USSG §5C1.2(a)(4).

II.   <u>OBSTRUCTION OF JUSTICE</u>

The defendant attempted to obstruct justice both before and after his arrest in the present case. As reflected by Count Two of the indictment–to which the defendant has

pled guilty–the defendant attempted to convince Ash to lie to law enforcement officers and to flee so that he could not provide information or testimony about the conspiracy. The facts underlying this charge are set forth in the presentence investigation report. At his guilty plea hearing, the defendant admitted the following facts related to the charge:

> Between March 1, 2004, and June 25, 2004, the defendant had several conversations with Ash about the criminal case. The defendant regularly asked Ash if he had spoken to law enforcement officers, indicated that they would eventually want to talk to him, and said that they would ask about the defendant's involvement. At one point, Ash told the defendant that he had been interviewed by law enforcement but that he had not mentioned that the defendant was involved in the offense. On June 25, 2004, the defendant met with Ash in Duval County, Florida. At this point, Ash was working with law enforcement and the conversation was secretly audiotaped. During the course of this discussion, the defendant told Ash that he did not have to say anything to anyone about the crime, that he should lie if asked about who built the underground marihuana growing area, and that the defendant knew people who would help Ash flee. The defendant provided Ash with identifying documents of another person, including a birth certificate, social security card, and voter registration card, for Ash to use to establish a different identity in another state. The defendant suggested that Ash should leave soon, before he was interviewed again by law enforcement.

The defendant's taking these steps–including going so far as to bring documents with which Ash could establish a new identity in another state–is a classic example of an attempt to obstruct justice.

Furthermore, while detained pending the outcome of this case, the defendant made statements to other inmates at the Baker County jail about plans to hire someone to murder three people: two law enforcement officers, DEA Special Agent Tommy Flowers and Putnam County Sheriff's Deputy John Merchant, and Ash. He stated that he intended to gain his release by indicating to the government that he would cooperate with the investigation of the offense. After his release, he said that he would arrange for

5

other persons to carry out the murders. He provided detailed plans about how he would arrange the murders and explained that he had sufficient money (at least $100,000) to hire the persons to carry them out. These threats–when viewed in light of the defendant's apparent ability to carry them out–constitute a further attempt to obstruct justice and warrant an upward adjustment under USSG §3C1.1 and the denial of acceptance of responsibility under USSG §3E1.1. See United States v. Bradford, 277 F.3d 1311, 1315 (11th Cir. 2002) (testimony of Deputy United States Marshal that three inmates had contacted him and told him that the defendant had made threats against the Deputy Marshal and one of the inmate witnesses was sufficient to support the obstruction of justice enhancement, even though the threats were not communicated to the target); United States v. Gaskin, 364 F.3d 438, 465-66 (4th Cir. 2004) (defendant's indirect threat to witness–by stating that he was going to have another witness killed–was sufficient to support enhancement, even though defendant said that the statement only evidenced his "blowing off steam," especially in view of defendant's past efforts to obstruct justice). They also constitute credible threats of violence that disqualify the defendant from receiving the safety valve under 18 U.S.C. §3553(f)(2) and USSG §5C1.2(a)(2).

        Respectfully submitted,

        PAUL I. PEREZ
        United States Attorney

By:   *s/ Arnold B. Corsmeier*
       ARNOLD B. CORSMEIER
       Assistant United States Attorney
       Florida Bar No. 0869139
       300 North Hogan Street, Suite 700
       Jacksonville, Florida  32202-4270
       Telephone:  (904) 301-6300
       Facsimile:   (904) 301-6310
       Email:       chip.corsmeier@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Mark J. Rosenblum, Esq.
    500 N. Ocean Street
    Jacksonville, FL 32202

                *s/ Arnold B. Corsmeier*
                ARNOLD B. CORSMEIER
                Assistant United States Attorney